# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| GRAVEL RATING SYSTEMS, LLC<br><br>v.<br><br>McAFEE, LLC. | **CIVIL ACTION No. 4:21-cv-259-ALM** |
| GRAVEL RATING SYSTEMS, LLC<br><br>v.<br><br>BROADCOM, INC. | **CIVIL ACTION No. 4:21-cv-329 ALM** |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant McAfee, LLC's Motion to Dismiss (Dkt. #11) and Defendant Broadcom, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. #10). After reviewing the relevant pleadings, the Court finds Defendants' motions should be **DENIED**.

### BACKGROUND

Plaintiff Gravel Rating Systems LLC ("Gravel") asserts Defendants infringed Claims 4, 5, 8, and 9 (the "Asserted Claims") from U.S. Patent No. 7,590,636 (the "'636 Patent"). The invention of this patent involves:

> a system and apparatus for allowing groups of individuals connected to a computer network such as the Internet to collaboratively build a self-organizing knowledge base that uses ratings and commentary provided by a plurality of users to rank, sort and deliver the information from the knowledge base which best matches each individual user's personal criteria for value in information.

'636 Patent at 1:15–22.

On June 23, 2021, Defendant McAfee, LLC ("McAfee") filed its Motion to Dismiss and Brief in Support (Dkt. #11). On July 9, 2021, Defendant Broadcom, Inc. ("Broadcom") filed its Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim which adopted McAfee's Motion to Dismiss and requested to join McAfee's motion (Dkt. # 10). On August 6, 2021, Gravel filed a combined response to Defendants' motions (Dkt. #16). On August 30, 2021, McAfee filed a reply (Dkt. #24).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-

pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants move to dismiss for failure to state a claim, arguing the patent-in-suit is invalid because the Asserted Claims are directed to an abstract idea and lack an inventive concept (Dkt. #10 at p. 2; Dkt. #11 at p. 3). Plaintiff responds that the Asserted Claims are patent-eligible under the *Alice* test, and that McAfee erroneously analyzed the Asserted Claims using only Claim 1 (Dkt. #16 at p. 9).[1]

---

[1] Attached to Gravel's response is the Declaration of Dr. Edwin Hernandez (the "Declaration"), in which Dr. Hernandez renders numerous opinions regarding the validity of the '636 Patent (Dkt. #16 Exhibit 2). On August 30, 2021, McAfee moved to strike the Declaration as extraneous material outside the proper scope of a Rule 12(b)(6) motion (Dkt. #23). Generally, in ruling on a Rule 12(b)(6) motion, courts may consider "the complaint, any documents

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). Monopolization of these "basic tools of scientific and technological work" through the grant of a patent "might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id*. (first quoting *Myriad*, 569 U.S. at 589; and then quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 85 (2012)).

The Supreme Court has set forth a framework for determining patent eligibility. *Alice*, 573 at 217. First, the court determines whether the claims at issue are directed towards one of the three patent-ineligible concepts. *Id*. If so, then the court then asks "[w]hat else is there in the claims before us?" *Id*. (alteration in original) (quoting *Mayo*, 566 U.S. at 78). In answering the second question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. The second step can be characterized as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. (alteration in original) (quoting *Mayo*, 566 U.S. at 72).

---

attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star*, 594 F.3d at 387. While the Court may have discretion to allow materials outside the pleadings pursuant to Federal Rule of Procedure 12(d), *Ware v. Associated Milk Producers, Inc*., 614 F.2d 413, 415 (5th Cir. 1980), the Court declines to exercise such discretion. The Court will not consider the Declaration in ruling on Defendants' motions.

A.   **Representativeness**

The parties dispute whether Claim 1 is representative. Unfortunately, neither party provides legal support as to whether Claim 1 is representative of the asserted claims. McAfee asserts Claim 1 is representative without any explanation (Dkt. # 11). Gravel responds that Claim 1 is not representative (Dkt. #16) but fails to identify any "legally relevant distinctions between the claim identified as representative and the remaining asserted claims." *PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1031 (E.D. Tex. Sept. 6, 2019). In its Reply, McAfee asserts Claim 1 is representative because the Asserted Claims all depend on Claim 1 (Dkt. #24).

"Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Here, the Court finds Claim 1 is representative because the Asserted Claims are all "substantially similar in that they recite little more than the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). As explained below, the Asserted Claims are directed to the abstract idea of managing, organizing, and presenting information. The claims therefore fall within the class of claims related to abstract ideas of collecting information, analyzing it, and displaying certain results of the collection and analysis. *See, e.g., Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citations omitted).

B.   *Alice* **Analysis**

The '636 Patent is broadly directed to the abstract idea of collecting, organizing, and displaying network-based knowledge. The Asserted Claims are recited below with Claim 1:

   1. A computer-implemented method, comprising:

> a computer system storing items of information in a database, wherein the items are received from a first set of two or more of a plurality of remote computer systems coupled to the computer system via a computer network;
>
> the computer system receiving, via the computer network, submissions regarding two or more particular ones of the stored items of information, wherein each submission is received from a corresponding one of a second set of two or more of the plurality of remote computer systems, wherein each of said submissions includes a rating and/or a comment regarding a corresponding one of the stored items that has been transmitted to the corresponding remote computer system via the computer network by the computer system;
>
> the computer system storing the received submissions in the database;
>
> the computer system receiving a request from a given one of the plurality of remote computer systems to view a listing of the stored items of information according to an ordering consistent with a selected criterion that pertains to the stored submissions; and
>
> responsive to the request, the computer system providing a first set of data to the given remote computer system, wherein the first set of data is usable on the given remote computer system to display said listing of the stored items according to said ordering.
>
> 4. The method of claim 1, wherein the database includes an extensible hierarchy of information categories, wherein the method further comprises permitting said given remote computer system to navigate through the extensible hierarchy.
>
> 5. The method of claim 4, wherein the request is received from the given remote computer system after receiving information from the given remote computer system indicating that a user of the given remote computer system has elected to navigate to a particular one of the information categories within the extensible hierarchy, wherein said stored items of information are associated with the particular information category.
>
> 8. The method of claim 1, wherein the computer system maintains at most one rating per contribution source for any given one of the stored items of information.
>
> 9. The method of claim 1 further comprising: controlling said receiving and said storing of the submissions to prevent a given contribution source from rating a given one of the stored items of information more than once.

'636 Patent at 13:29–14:47. The '636 Patent discloses a method of receiving, storing, organizing, and presenting network-based information.

In evaluating whether a particular claim is directed to patent-ineligible abstract ideas, courts generally begin by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Federal Circuit has acknowledged that the "[t]he concept of data collection, recognition, and storage" is well known and within the realm of abstract ideas. *Content Extraction*, 776 F.3d at 1347. Furthermore, the Federal Circuit has "recognized that merely presenting the results of abstract "processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract [.]" *Elec. Power Group*, 830 F.3d at 1354. Similarly, lower courts have recognized the concept of record access and management as an abstract idea. *See Pres. Wellness Techs. LLC v. Allscripts Health Sols.*, No. 2:15-cv-1559-ECB, 2016 WL 2742379, at *7 (E.D. Tex. May 10, 2016) (listing district court cases); *see also Protegrity USA, Inc. v. Netskope, Inc.*, No.15-cv-2515, 2015 WL 6126599, at *6 (N.D. Cal. Oct. 19, 2015) (finding claims directed to limiting access to information based on specified criteria are directed to an abstract idea). Here, because the Asserted Claims are directed at data collection, storage, management, and access, the Court finds they are directed to an abstract idea.

Although Plaintiff argues that Defendants overgeneralize the Asserted Claims, the Federal Circuit has stated that "the addition of merely novel or non-routine components to the claimed idea [does not] necessarily turn[] an abstraction into something concrete." *Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). "In any event, any novelty in the implementation of the idea is a factor to be considered only at the second step of the *Alice* analysis," to which the Court now turns. *Id*.

The next step in the *Alice* analysis is to examine the limitations of the claims to determine whether there is an "inventive concept" to "transform" the claimed abstract idea into patent-

7

eligible subject matter. *Alice*, 573 U.S. at 221. "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 217. Rather, application of such concepts "to a new and useful end . . . remain eligible for patent protection." *Id.* (citation omitted). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Moreover, the inventive concept need not be explicitly recited in the claims, but instead can be established elsewhere in the evidence. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

The '636 Patent was developed in the late 1990s to improve network-based knowledge sharing, which at the time, was mainly accomplished through threaded forums (Dkt. #1 ¶ 9). However, these forums presented three main problems: (1) there was no way to assess how useful or accurate a given contribution was to the thread; (2) it was difficult to organize the contributions to the threaded discussion in any logical manner; and (3) once many postings were in the system, it became unwieldy and difficult to find the useful postings in the mass of information (Dkt. #1 ¶ 9). The '636 Patent provides:

> A self-organizing system that is easy to navigate, easy to contribute content and opinions to, and that automatically presents the information that is most meaningful or useful to an individual user to that user's attention without discarding the rest of the information in the database . . . easy to interpret visual symbols and rating data for a number of information contributions in a way that allows them to be simultaneously displayed on a computer screen before they are selected and viewed by a user . . . [and] the framework for such a system that can easily be adopted to a number of subjects that may have varying rating criteria and subject organization parameters.

'636 Patent 3:4–18. The '636 Patent improved the threaded discussion scheme by "collecting ratings and comments associated with each item of information and allowing users to access and sort items of information according to selected rating criteria." '636 Patent at 3:44–52. A further

advantage of the '636 Patent is that it includes a "system of tracking rating submissions that prevents any one user from voting on a given content submission more than one time." '636 Patent at 5:47–50. Finally, the '636 Patent provided a more advantageous display of the information in the form of a list, where "[a]ny item in this list can be clicked, bringing detailed information to the user." '636 Patent at 11:34–40.

Gravel's allegations suggest that the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities. The Federal Circuit has repeatedly held that claims "directed to improvements in the functioning and operation of the computer are patent eligible." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3 1121, 1127 (Fed. Cir. 2018) (collecting cases).

Furthermore, there is a presumption that a patent is valid. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). Defendants bear the burden of proving invalidity by clear and convincing evidence, and the burden never shifts to Gravel to prove validity. *PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1040 (E.D. Tex. 2019). The Court is unconvinced Defendants have met their burden of showing the patent-in-suit is invalid by clear and convincing evidence.

## CONCLUSION

It is therefore **ORDERED** McAfee's Motion to Dismiss (Dkt. #11) and Broadcom's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. #10) are **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 15th day of November, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

9